IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MATTHEW DAGNAN, individually and as Parent and Next Friend of G.D., | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. |
| ST. JOHN'S MILITARY SCHOOL<br>    Serve: 1300 N. Santa Fe<br>        Salina, KS 67401 | )<br>)<br>)<br>)<br>) |
| And | ) |
| ST. JOHN'S MILITARY SCHOOL<br>ENDOWMENT FUND<br>    Serve:     Registered Agent<br>            Clark, Mize & Lindville<br>            129 S. 8th<br>            Salina, KS 67401 | )<br>)<br>)<br>)<br>)<br>)<br>) |
| And | ) |
| Kharisma Montes De Oca as parent and Guardian of S.A., a minor, Address unknown | )<br>) |
| Defendants. | )<br>) |

**COMPLAINT**

Plaintiffs, Matthew Dagnan, individually and as parent and next friend of G.D. ("G.D" or "Plaintiff") for their causes of action against Defendants St. John's Military School ("St. John's") and St. John's Military School Endowment Fund ("St. John's Endowment") (collectively referred to as "St. John's" or "Defendants") and S.A. state as follows:

**THE PARTIES**

1. Matthew Dagnan is a resident of the State of Tennessee and parent and legal guardian of G. D.

2. G.D. is a resident of the State of Tennessee. G.D. is a minor, under the age of 18. Matthew Dagnan is the parent and legal guardian of G.D. During the Spring of 2014, G.D. was enrolled as a student at St. John's.

3. St. John's is a Kansas not-for-profit corporation with its principal place of business at 110 East Otis Ave., Salina, Kansas 67401. The registered agent for service of process is St. John's Military School, 1300 North Santa Fe Ave., Salina, Kansas 67401.

4. St. John's Endowment is a Kansas not-for-profit corporation with its principal place of business at 110 East Otis Ave., Salina, Kansas 67401. The registered agent for service of process is Clark, Mize & Lindville, 129 S. 8th, Salina, KS 67401.

5. Upon information and belief, S.A. is a minor that currently resides in Washington State. S.A. attended St. John's during the time G.D. attended.

## JURISDICTION AND VENUE

6. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 as the matter in controversy exceeds the sum of $75,000 and the parties are citizens of different states.

7. Venue is proper pursuant to 28 U.S.C. § 1391 as Defendants are residents of this district. Furthermore, a substantial part of the events giving rise to the claims brought in this action took place in this judicial district.

## FACTS COMMON TO ALL COUNTS

### St. John's and St. John's Endowment

8. St. John's is a residential boarding school located in Salina, Kansas.

9. St. John's aggressively markets itself throughout the country via extensive internet marketing and advertising.

10. On its website, St. John's claims its principal objective is to help ensure its students' "future lives are filled with success, happiness, and personal fulfillment."

11. It further represents that the students there come from 32 different states and 7 foreign countries and the cost for tuition, room, board, and fees for the first year students at St. John's is $34,100.00.

12. On its landing page, St. John's claims it is "recognized as a top military school in the nation by Great Schools as published by Business Week Magazine." When you go to Great Schools' website and search for St. John's, Great Schools reflects an NR – no rating, and explains "we have not assigned a GreatSchools rating to this school, due to incomplete or unavailable data."

13. When searching GreatSchools website for military schools, many come up and at least a few have ratings provided by GreatSchools. St. John's does not yet its website also claims "St. John's is the only military school for boys in the country to be recognized by GreatSchools and Business Week magazine!"

14. St. John's Endowment was created in February of 1994.

15. The object and purpose of St. John's Endowment is twofold:

   a. To further the purposes and objectives of St. John's including without limitation the providing of funds for scholarships, capital improvements, operating expenses, and other purposes directly related to St. John's and its operations; and

   b. To secure gifts of money or property for the advancement of St. John's.

16. These are St. John's Endowment's only purposes and objectives identified in its Articles of Incorporation.

17. The individuals that run St. John's also direct St. John's Endowment.

3

18.     In its most recent annual report, St. John's Endowment identified two officers and four members of the governing body.

19.     St. John' only officers include Douglas Dutton as the "treasurer or equivalent" and Dale Browning as the "President or equivalent."

20.     Douglas Dutton is also the treasurer or equivalent of St. John's while Dale Browning is a member of its governing board.

21.     One member of the St. John's Endowment is Andrew England.  He is also a member of St. John's governing body and the President or equivalent of St. John's.

## St. John's Pattern and Practice

22.     St. John's houses and allegedly educates students from grades 6 through 12.

23.     St. John's students live on its campus in residential housing provided by St. John's.

24.     St. John's website acknowledges and specifically recognizes "The school receives young men at a key developmental stage in life; often they are struggling with issues of self-identity and self-discipline. The structured living environment is enhanced by the military lifestyle where peer leadership and peer demonstration are powerful tools with which a young man begins to establish a more mature sense of self."

25.     As a residential boarding school for minors, St. John's stands in the position of parent and guardian of each enrolled student. St. John's has a special duty to regulate and monitor the behavior of all students and protect each and every student.

26.     For many years, St. John's regular practice has been to allow its hand picked students to supervise and direct the actions of its other students in a rank-based scheme.

27.     These students come from all over the world and have various backgrounds that St. John's fails to adequately evaluate.

4

28.     Through this practice St. John's should have increased security and protection of its students.  Instead, St. John's relieves itself of the obligation to hire sufficient and competent staff to supervise its students throughout the evening and night.

29.     St. John's website claims "The adult staff provides daily, around the clock supervision and counsels the Cadets on their leadership and behavior" and "The military staff supervises and cares for the Cadets around the clock."

30.     Rather than having sufficient adults to supervise and control the atmosphere, St. John's invokes archaic methods of supervision such as "bruise checks." A process by which a student is visually examined by a staff member for signs of abuse and then required to explain where such marks came from.

31.     Similarly, St. John's has a camera system in certain parts of the school and residence halls.  St. John's represents to parents that the cameras keep an eye on all areas of the campus to protect the students. On its website it claims: "Staff become mentors, advisers and confidants, and provide structure when needed. To assist them, we have a campuswide security camera system that provides continuous surveillance of the common areas of barracks and outside campus areas."

32.     Instead, this camera system allows staff to remain in one area without patrolling the facilities.  This practice encourages laziness and staff sleeping during the night.

33.     It is understood amongst the students that night supervisors sleep rather than patrol the halls or watch the video.

34.     St. John's lack of supervision and refusal to spend money on necessary qualified human staff has resulted in numerous issues in the past.

35. St. John's has been accused in multiple prior lawsuits in the past of failing to supervise its students while they suffered physical abuse.

36. St. John's Endowment must have been aware of all the prior lawsuits, yet continues to exist solely to fund St. John's.

37. In addition to multiple lawsuits related to physical abuse in the past, St. John's has failed to maintain its students from sexual assaults.

38. St. John's knows its students are at risk of sexual assaults by other students.

39. In January of 2013, a student at St. John's was arrested and charged with seven counts of aggravated sexual battery and one count of attempted aggravated criminal sodomy.

40. After being initially released from jail, the boy returned to and stayed at St. John's for a while before being suspended and sent home.

41. After all of these prior lawsuits and student safety concerns, St. John's Endowment has not wavered from continually being in existence to fund St. John's.

### Plaintiff G.D.'s Experience and Sexual Assault

42. Dagnan was looking for a school to send his son to in late 2013. As a military individual, he thought a structured military environment could be good for his son.

43. Dagnan searched the internet and found St. John's website and its advertisements.

44. Based upon this, Dagnan took his son to St. John's.

45. G.D. was enrolled in St. John's for the 2014 Spring semester.

46. G.D. was 12 years old at the time he was enrolled into St. John's.

47. While a student at St. John's, G.D. witnessed St. John's lack of appropriate and sufficient safety precautions.

6

48. He viewed and had conversations with multiple students about the night staff's inability to stay awake and monitor the activities of the students.

49. It was common knowledge to him and the other students that the night staff did not stay awake.

50. While a student at St. John's, G.D. had his own room in a residence hall named Sage Hall.

51. Sage Hall had cameras in its hallways and a single monitoring area where the cameras could be viewed.

52. This procedure allows St. John's evening and night staff to remain in the one area to monitor students rather than physically walk through the halls to listen for sounds or look for suspicious activity.

53. As a twelve-year-old child, G.D. slept with the door to his room unlocked out of a fear of fire trapping him in his room.

54. G.D. informed the staff of his fear and that he would not lock his door.

55. Shortly after getting to St. John's, G.D. would get uncomfortable when one particular student in his company, Defendant S.A., glared at him.

56. S.A. would also look in G.D.'s direction for extended periods while in the shower.

57. G.D. was uncomfortable around S.A. and it appeared that others were as well.

58. Even though the strange behavior was reported to the school staff, S.A. remained in Sage Hall with all the middle school students.

59. In the Spring of the semester he attended St. John's, S.A. entered G.D.'s room in the middle of the night, forced himself upon G.D., and sexually assaulted him.

60. Because G.D. was in fear for his safety, he did not make any noises or run from his room.

61. After the event, G.D. continued to be in constant fear for his safety. Based upon what he learned and observed at St. John's he could not report the sexual assault because it would brand him as a snitch and put him in more danger.

62. G.D. also understood from St. John's procedures in the past, if G.D. made a report (even if there was an investigation) the student would remain on campus and G.D.'s safety would be further compromised.

63. After the sexual assault, S.A. continued to stalk and invoke fear in G.D. for the remainder of the semester.

64. Out of a fear for his safety because of a lack of adult supervision, G.D. did not directly report the sexual assault to St. John's staff.

65. G.D. did, however, make discreet efforts to put the staff on notice of his fear of the perpetrator.

66. After leaving St. John's, G.D. did not immediately report the assault to his parents.

67. It took a significant amount of time and therapy before G.D. had the safety and comfort to report his sexual assault.

68. As a result of the harm he suffered at St. John's, G.D. requires therapy and remains in fear of the events.

8

## COUNT I
## NEGLIGENT SUPERVISION
### (Against St. John's and its alter ego, St. Johns' Endowment)

69. Plaintiff G.D. incorporates each and every allegation contained in the prior paragraphs and make the same a part hereof as if fully set forth herein.

70. St. John's and its alter ego, St. John's Endowment acts in *loco parentis* with respect to its students. As such, St. John's and its alter ego, St. John's Endowment has a duty to control the conduct of the student that physically harmed Plaintiff so as to prevent him from doing such harm and to protect Plaintiff against unreasonable risks of harm.

71. In failing to properly supervise and/or otherwise control the conduct of its students, St. John's and its alter ego, St. John's Endowment, breached its duty.

72. St. John's and its alter ego, St. John's Endowment, breach of its duty to control the conduct of its student, S.A., was the cause-in-fact and proximate cause of Plaintiff's injuries.

73. Plaintiff G.D. suffered, and continues to suffer, damages as a direct result of St. John's and its alter ego, St. John's Endowment, negligence in the form of medical bills, psychiatric bills, pain and suffering, future lost income, and other damages.

74. St. John's and its alter ego, St. John's Endowment, is directly liable for Plaintiff's damages.

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in his favor against St. John's and its alter ego, St. John's Endowment, in an amount in excess of $75,000; that the costs of this action be assessed against St. John's and its alter ego, St. John's Endowment; that the Court grant punitive damages against St. John's and its alter ego, St. John's Endowment; and, that the Court grant such other and further relief as it deems fair and equitable in the circumstances.

## COUNT II
## INTENTIONAL FAILURE TO SUPERVISE
### (Against St. John's and its alter ego, St. John's Endowment)

75. Plaintiff G.D. incorporates each and every allegation contained in the prior paragraphs and make the same a part hereof as if fully set forth herein.

76. St. John's and its alter ego, St. John's Endowment, acts in *loco parentis* with respect to its students. As such, St. John's and its alter ego, St. John's Endowment, has a duty to control the conduct of the student that physically harmed G.D. so as to prevent him from doing such harm and to protect Plaintiff against unreasonable risks of harm.

77. St. John's and its alter ego, St. John's Endowment, knew of its duty to control its students and was aware of the dangerous propensities of some of its students.

78. St. John's and its alter ego, St. John's Endowment, previously encountered multiple assault allegations and even sexual assault allegations regarding a student yet even after his arrest, St. John's and its alter ego, St. John's Endowment, decided to bring the student back onto its campus.

79. By intentionally failing to supervise, intentionally creating an unsafe environment and/or otherwise controlling the conduct of its students, St. John's and its alter ego, St. John's Endowment, nurtures and promotes the ability for students to assault others and, as such, breached its duty to G.D.

80. G.D. suffered damages as a result of St. John's and its alter ego, St. John's Endowment, failure to supervise its students.

81. St. John's and its alter ego, St. John's Endowment, is therefore liable to G.D.

WHEREFORE, G.D. respectfully requests the Court enter judgment in his favor against St. John's and its alter ego, St. John's Endowment, in an amount in excess of $75,000; that the

costs of this action be assessed against St. John's and its alter ego, St. John's Endowment; that the Court grant punitive damages against St. John's and its alter ego, St. John's Endowment; and, that the Court grant such other and further relief as it deems fair and equitable in the circumstances.

**COUNT III**
**OUTRAGE**
**(Against St. John's and its alter ego, St. John's Endowment)**

82. Plaintiff G.D. incorporates each and every allegation contained in the prior paragraphs and make the same a part hereof as if fully set forth herein.

83. Through its conduct, St. John's and its alter ego, St. John's Endowment, acted intentionally, or with reckless disregard, of the possibility of causing emotional distress to G.D. by placing him in close proximity with persons in its custody whom it knew, or should have known, acted in a manner that was physically injurious to others and by further failing to supervise or control the conduct of the individual.

84. St. John's and its alter ego, St. John's Endowment, continued conduct, as outlined in the paragraphs above, was extreme and outrageous.

85. St. John's and its alter ego, St. John's Endowment, conduct was the cause-in-fact and proximate cause of G.D.'s emotional distress.

86. As a result of St. John's and its alter ego, St. John's Endowment, conduct, Plaintiff suffered severe and extreme emotional distress.

87. St. John's and its alter ego, St. John's Endowment, actions amount to Outrage and it is, therefore, liable to G.D. for compensatory and punitive damages.

WHEREFORE, G.D. respectfully requests the Court enter judgment in his favor against St. John's and its alter ego, St. John's Endowment, in an amount in excess of $75,000; that the

costs of this action be assessed against St. John's and its alter ego, St. John's Endowment; that the Court grant punitive damages against St. John's and its alter ego, St. John's Endowment; and, that the Court grant such other and further relief as it deems fair and equitable in the circumstances.

## COUNT IV
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
(Against St. Johns' and its alter ego, St. John's Endowment)

88. Plaintiff incorporates each and every allegation contained in the prior paragraphs and make the same a part hereof as if fully set forth herein.

89. St. John's and its alter ego, St. John's Endowment, acts in *loco parentis* with respect to its students. As such, St. John's and its alter ego, St. John's Endowment, has a duty to control the conduct of the student that physically harmed G.D. so as to prevent him from doing such harm and to protect G.D. against unreasonable risks of harm.

90. In failing to properly supervise and/or otherwise control the conduct of its students, St. John's and its alter ego, St. John's Endowment, breached its duty.

91. Through its conduct, St. John's and its alter ego, St. John's Endowment, acted with disregard of the possibility of causing emotional distress to G.D. by placing him in close proximity with persons in its custody whom it knew, or should have known, acted in a manner that was physically injurious to others and by further failing to supervise or control the conduct of the individual.

92. St. John's and its alter ego, St. John's Endowment, continued conduct, as outlined in the paragraphs above, was also extreme and outrageous.

93. St. John's and its alter ego, St. John's Endowment, conduct was the cause-in-fact and proximate cause of G.D.'s emotional distress.

12

94.     As a result of St. John's and its alter ego, St. John's Endowment, conduct, G.D. suffered severe and extreme emotional distress.

95.     St. John's and its alter ego, St. John's Endowment, actions amount to Negligent Infliction of Emotional Distress and it is, therefore, liable to Plaintiff for compensatory and punitive damages.

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in his favor against St. John's and its alter ego, St. John's Endowment, in an amount in excess of $75,000; that the costs of this action be assessed against St. John's and its alter ego, St. John's Endowment; that the Court grant punitive damages against St. John's and its alter ego, St. John's Endowment; and, that the Court grant such other and further relief as it deems fair and equitable in the circumstances.

## COUNT V
## VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT
### (Against St. John's and St. John's Endowment)

96.     Plaintiff incorporates each and every allegation contained in the prior paragraphs and make the same a part hereof as if fully set forth herein.

97.     Plaintiff Matthew Dagnan is a resident of Tennessee and therefore shielded by the laws of the State of Tennessee.

98.     Via their website, St. John's and its alter ego, St. John's Endowment, represent it is a highly reputable boarding school.

99.     It further represents the students are protected by a competent staff at all times.

100.    These statements were false representations of the grade and quality of the services St. John's could provide as well as misrepresentations of the standard and quality of the services St. John's would provide.

101. Dagnan relied upon the misrepresentations and the misrepresentation that cameras monitor all activities, around the clock, when determining whether to send G.D. to St. John's.

102. Relying upon these representations, Dagnan provided a non-refundable payment (after taking a loan) to St. John's in return for it to provide an education for G.D.

103. St. John's and its alter ego, St. John's Endowment, statement were false as it has no rating on Great Schools and it did not supervise and protect G.D. around the clock.

104. By knowingly making these false statements, St. John's violated the Tennessee Consumer Protection Act in representing its services have benefits it does not have; misrepresenting the standard and quality of the care to be provided to G.D.; and in using statements that create a false impression of the quality of the care to be provided to G.D.

105. As a result of its actions, Dagnan has suffered damages.

WHEREFORE, Plaintiff Matthew Dagnan respectfully requests the Court enter judgment in his favor against St. John's and St. John's Endowment in an amount in excess of $75,000; award treble damages as is provided pursuant to Tenn. Code. Ann § 47-18-109; award Plaintiff his attorney fees as allowed pursuant to Tenn. Code. Ann § 47-18-109; that the costs of this action be assessed against St. John's and St. John's Endowment; that the Court grant punitive damages against St. John's and St. John's Endowment; and, that the Court grant such other and further relief as it deems fair and equitable in the circumstances

## COUNT VI
## CONSPIRACY
### (Against St. John's and St. John's Endowment)

106. Plaintiff incorporates each and every allegation contained in the prior paragraphs and make the same a part hereof as if fully set forth herein.

107. St. John's and St. John's Endowment work together to keep funding St. John's and keep it in business as a place that houses boys from grades 6-12.

108. St. John's and St. John's Endowment together knowingly fail to provide adequate supervision for the boys at St. John's.

109. By funneling money to be held in St. John's Endowment, St. John's and St. John's Endowment intentionally insulate St. John's from being held accountable for a judgment.

110. By working together to fund St. John's yet keep its bank accounts limited, St. John's and St. John's Endowment participate in a conspiracy to promote a dangerous environment that fails to supervise boys and puts them at risk of harm yet prevents St. John's from facing the risk of paying an excessive judgment.

111. St. John's and St. John's Endowment's scheme is an over act intended to shield St. John's yet harm boys at the school.

112. As a result of St. John's and St. John's Endowment's actions, G.D. has suffered significant harm.

113. St. John's and St. John's Endowment are directly liable for Plaintiff's damages.

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in his favor against St. John's and St. John's Endowment in an amount in excess of $75,000; that the costs of this action be assessed against St. John's and St. John's Endowment; that the Court grant

punitive damages against St. John's and St. John's Endowment; and, that the Court grant such other and further relief as it deems fair and equitable in the circumstances.

## COUNT VII
## PIERCE THE CORPORATE VEIL/ALTER EGO

114. Plaintiff incorporates each and every allegation contained in the prior paragraphs and make the same a part hereof as if fully set forth herein.

115. St. John's Endowment's sole reason for existence is to fund St. John's.

116. It has many of the same officers and directors on its board as St. John's, including the president of St. John's.

117. St. John's Endowment was created as a mere subterfuge to leaving St. John's undercapitalized and underfunded, thereby allowing it to maintain an environment that is not safe for its students yet shield St. John's from liability.

118. St. John's Endowment is a legal fiction that must be viewed with St. John's as one in the same and that allows promotes injustice by shielding St. John's from responsibility.

119. St. John's Endowment's veil must be pierced and it should be held for the damages suffered by G.D.

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in his favor against St. John's in an amount in excess of $75,000; that the costs of this action be assessed against St. John's; that the Court grant punitive damages against St. John's; and, that the Court grant such other and further relief as it deems fair and equitable in the circumstances

## COUNT VIII
## BATTERY AND ASSAULT
## (Against Defendant A.S.)

120. Plaintiff G.D. incorporates each and every allegation contained in the prior paragraphs and make the same a part hereof as if fully set forth herein.

121. While students at St. John's, A.S. entered G.D.'s room and caused harmful offensive contact to G.D. by forcing sexual acts upon him.

122. A.S. has the intent to batter G.D.

123. After the sexual battery, A.S. continued to stalk G.D. causing G.D. to be in reasonable apprehension of harmful or offensive contact by A.S.

124. As a result of A.S.'s actions, G.D has suffered damages.

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in his favor against A.S. in an amount in excess of $75,000; that the Court grant punitive damages against A.S.; and, that the Court grant such other and further relief as it deems fair and equitable in the circumstances

## COUNT IX
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## (Against Defendant A.S.)

125. Plaintiff G.D. incorporates each and every allegation contained in the prior paragraphs and make the same a part hereof as if fully set forth herein.

126. While at St. John's, A.S. acted extremely outrageous when coming into G.D.'s room and continually stalking him.

127. A.S.'s actions were done with reckless disregard for G.D.'s safety.

128. As a result of A.S.'s actions, G.D. has suffered damages in the form of extreme emotional distress.

17

129. A.S.'s actions amount to Negligent Infliction of Emotional Distress and he is, therefore, liable to Plaintiff for compensatory and punitive damages

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in his favor against A.S. in an amount in excess of $75,000; that the Court grant punitive damages against A.S.; and, that the Court grant such other and further relief as it deems fair and equitable in the circumstances.

## JURY TRIAL

Plaintiffs request a jury trial on all claims.

## DESIGNATION OF PLACE OF TRIAL

Plaintiffs desire Kansas City, Kansas as the location for trial of this matter.

Respectfully Submitted,

DRZ Law, LLC

/s/ Daniel R. Zmijewski
Daniel R. Zmijewski   KS # 21275
Christopher Dove      KS #21251
9229 Ward Parkway, Suite 370
Kansas City, MO 64114
P: 816-333-4379
F: 816-523-5667
E: dan@drzlawfirm.com

ATTORNEYS FOR PLAINTIFFS