**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **MATTHEW DAGNAN, Individually and As Parent and Next Friend of G.D.,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**ST. JOHN'S MILITARY SCHOOL,** )<br>**ST. JOHN'S MILITARY SCHOOL** )<br>**ENDOWMENT FUND and S.A., a minor,** )<br>)<br>**Defendants.** )<br>_____)  | **Case No. 16-2246-CM** |

**MEMORANDUM AND ORDER**

This matter is before the court on defendants', St. John's Military School ("St. John's") and St. John's Military School Endowment Fund ("St. John's Endowment"), Motion to Dismiss, or, in the Alternative to Stay the Proceedings and Compel Arbitration. (Doc. 5.) Plaintiff Matthew Dagnan brings this case alleging that defendants St. John's and St. John's Endowment were negligent in their supervision of his son G.D. Plaintiff also claims that defendant S.A. sexually assaulted G.D. while they were students at St. John's. St. John's and St. John's Endowment argue that plaintiff's complaint should be dismissed for lack of subject matter jurisdiction, improper venue, and because it fails to state a claim under Federal Rules of Civil Procedure 12(b)(1), (3), and (6). Defendants argue that the basis for dismissal arises from the enrollment contract that plaintiffs voluntarily entered into which contains an arbitration clause. For the reasons set forth below, the court grants defendants' motion.

**I.      Plaintiff's allegations**

Plaintiff enrolled his twelve-year-old son, G.D., in the 2014 spring semester at St. John's. G.D. had his own room located in the residence hall, Sage Hall.  Sage Hall had cameras in its hallways and a single monitoring area where the cameras could be viewed by St. John's staff.

G.D. began to feel uncomfortable when defendant S.A., another St. John's student, glared at him or looked in his direction for extended periods of time when he was in the shower.  Plaintiff claims that S.A.'s strange behavior was reported to St. John's staff, but S.A. remained in Sage Hall with the other middle school students.

One night, S.A. went into G.D.'s room and sexually assaulted him.  G.D. was scared but did not make any noises or run from his room.  G.D. believed that he could not report the sexual assault because it would brand him as a snitch and put him in more danger of abuse.  G.D. understood from St. John's past procedures that if he made a report, S.A. would remain on campus and G.D.'s safety would be further compromised.

S.A. continued to stalk G.D. after the assault and G.D. continued to fear for his safety while at St. John's.  After leaving St. John's, G.D. did not immediately report the assault to his parents.  G.D. went to therapy and after a significant amount of time, he reported the assault.  G.D. continues to go to therapy and remains in fear from this experience.

Plaintiff claims that St. John's has a special duty to regulate and monitor the behavior of all students and protect each and every student.  Plaintiff alleges that St. John's and St. John's Endowment were aware of other incidents of physical abuse and sexual assaults on other students on campus. Plaintiff brings claims for negligent supervision, intentional failure to supervise, outrage, negligent infliction of emotional distress, violation of the Tennessee Consumer Protection Act, and conspiracy against St. John's and St. John's Endowment.  Plaintiff also brings claims for battery and assault and negligent infliction of emotional distress against S.A.

**II.     The enrollment contract**

Plaintiff entered into the enrollment agreement when enrolling G.D. at St. John's. The parties agree that the enrollment contract contains an arbitration clause. The contract states that the parent acknowledges that execution of the contract shall not only bind and apply to the parent, but also to the minor on whose behalf the contract is executed. The contract is executed for both the benefit of the minor and the parent and shall bind the minor to the same terms as the parent.

Likewise, the arbitration clause applies to both the parent and minor and states that any disagreements, disputes, or potential causes of action between St. John's and the parent or minor on whose behalf the contract is executed, shall be submitted to final and binding arbitration. Arbitration is to be conducted according to the applicable rules of the American Arbitration Association ("AAA"). The obligation to arbitrate is not binding with respect to claims by St. John's against the parent or minor arising out of default under the Non-Negotiable Promissory Note.

**III.    Legal Standards**

Defendants filed their motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), (3), and (6). Defendants claim that their motion to dismiss should be treated as a motion for summary judgment under Fed. R. Civ. P. Rule 56 because they presented evidence outside of the pleadings—the enrollment contract at issue—as part of their motion to dismiss. Plaintiff does not object and argues that in the event that he demonstrates a genuine issue of material fact, then the court must hold a trial on the existence of a valid arbitration agreement.

When matters outside the pleading are presented to and not excluded by the court, the court must treat the motion as one for summary judgment and dispose of the motion as provided in Rule 56, and "all parties must be given reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). If neither party is prejudiced, a court may convert a motion to dismiss

to a motion for summary judgment without further notice or opportunity for additional briefing. *Nkemakolam v. St. John's Military Sch.*, 876 F. Supp. 2d 1240, 1244 (D. Kan. 2012). Neither party is prejudiced in this case, as both parties specifically address the enrollment contract containing the arbitration clause and cite to summary judgment standards in their memoranda. Therefore, the court will treat defendants' motion as one for summary judgment under Rule 56.

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Id.* (internal citation omitted).

**IV.    Discussion**

St. John's and St. John's Endowment seek dismissal of all claims, arguing that the arbitration and forum selection clauses of the enrollment contract prohibit plaintiff from filing this case in federal court. Plaintiff does not dispute that his claims in this lawsuit are covered by the arbitration agreement. However, plaintiff claims that defendants cannot compel arbitration because the arbitration clause is illusory, fails to effectively vindicate plaintiff's rights, and is unconscionable. Plaintiff also urges the court not to allow boarding schools, such as St. John's, to enforce arbitration agreements against minors who are victims of sexual assault for public policy reasons.

Both parties cite the Federal Arbitration Act ("FAA"). The FAA favors arbitration. *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 977 (10th Cir. 2014). "But before the Act's heavy hand in

favor of arbitration swings into play, the parties themselves must agree to have their disputes arbitrated." *Id.* The court's presumption of arbitrability "falls away" because plaintiff, the non-moving party, disputes whether a valid and enforceable arbitration agreement exists. *See Hutton & Hutton Law Firm, LLC v. Girardi & Keese*, 96 F. Supp. 3d 1208, 1228 (D. Kan. 2015) (citing *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir.1998). Section 2 of the FAA allows an arbitration clause to be invalidated by contract defenses, such as fraud, duress, or unconscionability. *Nesbitt v. FCNH, Inc.*, 811 F.3d 371, 376 (10th Cir. 2016).

The court may compel arbitration only when satisfied that there is no issue with the agreement to arbitrate. *See Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004). The court looks to Kansas law to determine whether the parties agreed to arbitrate. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (recognizing that the determination of an arbitration agreement is generally made on the basis of "ordinary state-law principles that govern the formation of contracts.").

If the court finds that it is not clear as to whether the parties opted for or against arbitration, then the FAA tells courts to "proceed summarily to the trial" on the relevant facts. *Howard*, 748 F.3d at 977 (citing 9 U.S.C. § 4). "Once the facts are clear, courts must then apply state contract formation principles and decide whether or not the parties agreed to arbitrate." *Id.* (citing *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006)).

**A. Illusory**

Plaintiff claims that the arbitration agreement is illusory because St. John's reserves the right to change the terms of the enrollment contract by revising any rules or regulations in the Cadet Handbook, Omnibus, or other informative documents that are incorporated in the enrollment contract. Plaintiff claims that St. John's ability to revise "other informational documents" allows for it to modify

any number of documents affecting plaintiff's rights.  Plaintiff points out that the enrollment contract neither defines nor limits the scope of what constitutes "other informational documents" and argues that this broad language encompasses revision of the arbitration agreement.

Plaintiff cites *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002) in support of his argument, which held that an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory.  However, the problematic language in *Dumais* was found in the employee handbook, which was interpreted to reserve the employer's right to modify the arbitration agreement contained within.  *See id.* at 1219.

Here, there is no ambiguity in the provisions set forth in the enrollment contract.  The Cadet Handbook, Omnibus, or other informative documents concern the rules and regulations of St. John's.  The handbooks and other informative documents do not relate to the arbitration agreement.  *See also White v. Four B Corp.*, No. 11-2416-JWL, 2011 WL 4688843, at *3 (D. Kan. Oct. 5, 2011) (finding that the provision allowing for modification of the company's rules or regulations was separate from the arbitration agreement and further that the arbitration agreement was not a "rule or regulation" of the company.).

The enrollment contract provides that St. John's may revise its handbooks and other informative documents, but this provision is separate from the arbitration clause.  This provision does not reference the arbitration agreement in any way.  The arbitration provision contains no express language or indication that St. John's retained the right to modify the terms of the arbitration agreement.  Nor does the court find that reference to revision of school handbooks or other informative documents allows for an interpretation that St. John's can unilaterally revise the arbitration agreement.  Under these facts, the agreement is not illusory.  *See White*, 2011 WL 4688843 at *3.

**B. Effective vindication exception**

Plaintiff claims that the arbitration agreement does not allow for effective vindication of his rights because of the substantial costs involved as a result of compliance with the AAA rules.  Plaintiff points to the fee-sharing provisions in Rules 53 and 54 of the AAA and argues that these provisions effectively deny him access to arbitration because of the substantial costs he must advance prior to arbitration.

Federal courts have recognized what is referred to as "the effective vindication exception" to the FAA.  *Nesbitt*, 811 F.3d at 376–77 (citing *Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310 (2013)).  This exception applies to provisions in "'an arbitration agreement forbidding the assertion of certain statutory rights,' and 'would perhaps cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable.'"  *Id.*  Plaintiff seeks to invalidate the arbitration agreement on the ground that arbitration would be prohibitively expensive and therefore, bears the burden of showing the likelihood of incurring such costs.  *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000).

The arbitration agreement states that arbitration will be conducted according to the then applicable rules of the AAA.  Plaintiff points to the fee-sharing provisions in the AAA's Commercial Rules 53 and 54 as governing the applicable fees and costs for pursuing arbitration.

Plaintiff states that he will be responsible for: (1) advancing the filing fee for his claim, (2) paying the expenses for any witnesses produced, and (3) splitting all other expenses of arbitration, including all travel and other related expenses of the arbitrator.  Plaintiff alleges that he will likely need to hire an expert to establish an injury and damages and will have to advance the costs of the expert under Rule 54. Due to these fees and costs, plaintiff alleges that he is unlikely able to risk advancing these substantial fees to access an unfamiliar and potentially adverse forum.  Plaintiff argues that the enrollment contract prevents him from effectively vindicating G.D.'s claims and should be invalidated.

Plaintiff alleges that his family has incurred significant medical expenses after the assault and that G.D. relies on him as his parent to pay for the costs of arbitration. He also argues that unlike judicial proceedings, an arbitration forum might not have the same authority to protect the privacy interests of him or G.D. as a victim of sexual assault. Plaintiff states that St. John's is a "repeat player" in arbitration whereas he is unfamiliar with that forum. Based on all of these uncertainties, plaintiff argues that the risk of these factors is a disincentive to him advancing the arbitral fees and costs.

The Supreme Court has not indicated how detailed a showing of prohibitive fees must be to invalidate an arbitration agreement. *See Green Tree*, 531 U.S. at 92 (sidestepping the issue because there was no showing at all on the point). In *Green Tree*, the Supreme Court noted that the arbitration agreement was silent on the subject of the respondent's costs and the "risk" that the respondent would be saddled with prohibitive costs was too speculative to justify invalidation of the arbitration agreement. *Id.* at 91.

Here, the arbitration agreement itself is not silent. It details that arbitration is to be conducted according to the then-applicable rules of the AAA. Plaintiff argues that under AAA Rules 53 and 54 he will likely be responsible for advancing the arbitral fee and some of the costs for arbitration, including an expert witness. However, he has not provided the court with an actual estimate of these fees or costs. *Cf. Nesbitt*, 811 F.3d at 375 (noting that the district court accepted Nesbitt's estimate that she would likely incur between $2,320.50 and $12,487.50 in costs simply paying for the arbitrator's time); *Shankle v. B-G Maint. Mgmt. of Colo., Inc.*, 163 F.3d 1230, 1234 (10th Cir. 1999) ("Assuming Mr. Shankle's arbitration would have lasted an average length of time, he would have had to pay an arbitrator between $1,875 and $5,000 to resolve his claims. Mr. Shankle could not afford such a fee[ ] . . . ."). Plaintiff has provided no dollar amount with respect to any of his arguments and the court will not assume or speculate as to what the estimated fees and costs will be.

Rule 53 of the AAA allows for a deferment or reduction of administrative fees in the event of extreme hardship on the part of any party. AAA, Commercial Arbitration Rules, Rule 53 (2013). Plaintiff acknowledges that the AAA provides a fee-waiving provision for cases of financial hardship, but argues that this fee-waiver is uncertain and at the discretion of the arbitrator. Still, it is not apparent from the plaintiff's allegations that he is facing prohibitive costs because the court has no dollar amount to use as a gauge.

Plaintiff's concern that the arbitral forum is "unfamiliar" or "potentially adverse" is unsupported and speculative. *See generally Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 780 (10th Cir. 2010) (rejecting the plaintiff's fear because it was based on an unsupported assumption that the arbitrator will be hostile to the substantive rights created by the Sarbanes–Oxley Act); *Shankle*, 163 F.3d at 1235 (noting that there are protections in place that help to prevent arbitrator bias, such as professional and ethical standards). The court will not invalidate the arbitration agreement simply because St. John's may be more familiar with the arbitral forum.

The court finds that plaintiff has failed to meet his burden in showing that there is dispute as to whether the arbitration clause allows for effective vindication of plaintiff's rights. Plaintiff merely sets forth allegations lacking factual support. The mere possibility of incurring fees or costs is insufficient to invalidate an arbitration clause based on the effective vindication exception. *See Green Tree*, 531 U.S. at 91. Without more, the court will not assume or speculate that plaintiff's alleged barriers warrant invalidating the arbitration agreement.

### C. Unconscionability

Plaintiff claims that the unilateral arbitration clause contained in the enrollment contract is unconscionable under Kansas law because it allows St. John's to choose between litigation or arbitration for certain claims, while denying plaintiff any choice of venue. Plaintiff argues that the

enrollment agreement requires him to submit any claim against St. John's to arbitration, yet St. John's is not bound by a reciprocal obligation to arbitrate any claims against G.D. or plaintiff.  Plaintiff further argues that the arbitration clause at issue possesses at least six characteristics of an unconscionable contract under Kansas law.

Kansas courts use the doctrine of unconscionability to protect against one-sided, oppressive and unfairly surprising contracts, and not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain. *Wille v. Southwestern Bell Tel. Co.*, 549 P.2d 903, 906 (Kan. 1976).  Courts must find that the challenged provision is so outrageous and unfair in its wording or its allocation that it shocks the conscience. *Oesterle v. Atria Mgmt. Co., LLC*, No. 09-4010-JAR, 2009 WL 2043492, at *3 (D. Kan. July 14, 2009) (citing *Adams v. John Deere Co.*, 774 P.2d 355, 357 (Kan. Ct. App. 1989)).  "Any finding of unconscionability must be accompanied by some element of deceptive bargaining conduct as well as unequal bargaining power." *Id.*  Mere inequality of bargaining power between the parties is not enough. *White,* 2011 WL 4688843 at *4.  Unconscionability generally must be shown "at the inception of the contract rather than in the light of subsequent events." *Knopke v. Ford Motor Co.*, No. 14-2225-JAR-JPO, 2014 WL 5817326, at *4 (D. Kan. Nov. 10, 2014) (citing Kan. Stat. Ann. § 84-2-302(1)).

Courts consider the following factors in determining whether a contract provision is unconscionable:

> (1) The use of printed form or boilerplate contracts drawn skillfully by the party in the strongest economic position, which establish industry wide standards offered on a take it or leave it basis to the party in a weaker economic position . . .; (2) a significant cost-price disparity or excessive price; (3) a denial of basic rights and remedies to a buyer of consumer goods . . .; (4) the inclusion of penalty clauses; (5) the circumstances surrounding the execution of the contract, including its commercial setting, its purpose and actual effect . . .; (6) the hiding of clauses which are disadvantageous to one party in a mass of fine print trivia or in places which are inconspicuous to the party signing the contract . . .; (7) phrasing clauses in language that is incomprehensible to a layman or that divert his attention from the problems raised by them or the rights given up through

-10-

> them; (8) an overall imbalance in the obligations and rights imposed by the bargain; (9) exploitation of the underprivileged, unsophisticated, uneducated and the illiterate . . .; and (10) inequality of bargaining or economic power.

*Oesterle*, 2009 WL 2043492, at *3 (citing *Wille*, 549 P.2d at 906–07).

Plaintiff challenges the enforcement of the arbitration agreement and thus, bears the burden of establishing unconscionability. *White*, 2011 WL 4688843 at *4. As mentioned above, plaintiff claims that the arbitration agreement contains six of the ten factors. The court disagrees. While plaintiff points to a number of facts that it alleges makes the arbitration agreement unenforceable, none rise to the level that may "shock the conscience."

Plaintiff claims that even if this court finds that the enrollment contract is not unconscionable, it should hold a bench trial on this issue because there is a material dispute between the parties as to whether the contract is unconscionable. The court disagrees. Determination as to whether a contract is unconscionable is a question of law. *See generally Tufts v. Newmar Corp.*, 53 F. Supp. 2d 1171, 1180–81 (D. Kan. 1999) ("Determining whether defendants' conduct is unconscionable is a question for the Court."). The court finds as a matter of law that the challenged provisions are not so outrageous and unfair in their wording or allocation that the enrollment contract shocks the conscience. *See Oesterle*, 2009 WL 2043492 at *3. The enrollment contract containing the arbitration agreement is not unconscionable and a bench trial is unnecessary to resolve the matter.

### D.  Public policy

It is undisputed that G.D. did not sign the enrollment contract. However, the parties disagree on whether the arbitration clause is enforceable against G.D. because plaintiff signed it on his behalf. Plaintiff argues that as a matter of public policy, defendants should not be allowed to compel arbitration against G.D. because he is a minor.

-11-

This matter has been litigated before the court in two prior cases against St. John's. *See Nkemakolam*, 876 F. Supp. 2d at 1243–44; *Bizilj v. St. John's Military Sch.*, No. 08-CV-2036-CM, 2008 WL 4394713, at *4 (D. Kan. Sept. 24, 2008). However, in both of those cases, the St. John's arbitration clause did not contain language intended to include the minor students' claims within the scope of the arbitration provision. *Id.* Nor did the arbitration clause include language that the contract was for the benefit of the minor students or that their rights were being waived. *Id.*

The enrollment contract at issue in this case, includes language that binds and applies to the minor on whose behalf the contract is executed along with the parent. It also states that execution of the contract is for the benefit of both the minor and parent. The arbitration clause includes the minor in the terms and states that the minor on whose behalf the contract is executed agree to submit a cause of action to a final and binding arbitration conducted according to the rules of the AAA.

Both parties cite to the FAA as governing the arbitration agreement. Both the Uniform Arbitration Act and the FAA allow for a contractual provision to arbitrate regardless of whether the action sounds in tort or in contract. *Beeson v. Erickson*, 917 P.2d 901, 904 (Kan. Ct. App. 1996). While the Kansas Uniform Arbitration Act differs from the Uniform Arbitration Act and the FAA because it exempts tort actions from its arbitration provisions, the court does not apply the Kansas Uniform Arbitration Act. The Tenth Circuit has recognized that both the United States and Kansas Supreme Courts hold that the FAA preempts the limitations that Kansas law might otherwise apply to the enforceability of arbitration agreements, which includes torts. *Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1152 (10th Cir. 2007). The mere fact that Kansas excludes tort claims from arbitration under its state act is not indicative that the arbitration agreement at issue violates public policy because G.D.'s claims sound in tort. *See id.* (noting that the Kansas Supreme Court has held that the FAA requires state courts to enforce an arbitration clause despite contrary state policy).

The arbitration agreement is not a pre-injury liability release.  Plaintiff did not contract away G.D.'s ability to bring an action against defendants, but instead contracted the designated forum to bring a claim.  This distinction is important as most courts have held that "[a]greements by parents to indemnify or hold harmless persons with respect to future claims by the parents' minor children have . . . usually been invalid with respect to the minors' claims . . . ." *Johnson v. New River Scenic Whitewater Tours, Inc.*, 313 F. Supp. 2d 621, 632 (S. D. W. Va. 2004) (citing Joseph H. King, Jr., *Exculpatory Agreements for Volunteers in Youth Activities–The Alternative to "Nerf (registered)" Tiddlywinks*, 53 Ohio St. L.J. 683, 714 n.132 (1992)).

Here, plaintiff's agreement with St. John's involved decisions about G.D.'s academics, choice of school, and care of G.D.  This decision falls under the umbrella of plaintiff's fundamental liberty interest in the 'care, custody and control' of his son G.D." *See generally Troxel v. Granville*, 530 U.S. 57, 66 (2000).  Plaintiff did not release St. John's from liability with respect to G.D.'s claims, but agreed to arbitration as the forum in which G.D. could bring a claim against defendants.  The arbitration agreement at hand does not violate public policy and G.D. is bound by its terms just as plaintiff.

**E.  Defendants St. John's Endowment and S.A.**

Defendants claim that plaintiff's claims against St. John's Endowment should proceed to arbitration even though the enrollment contract does not reference nor was signed by St. John's Endowment.  Defendants recognize that plaintiff's complaint treats St. John's Endowment as the alter ego of St. John's.  For purposes of this motion only, defendants agrees with plaintiff's position that the two defendants are the alter ego for one another and argue that they should be treated equally and all defendants referred to arbitration.

Plaintiff does not dispute defendants' claims, but instead argues that the court must make a definitive ruling as to whether defendants are alter egos before ruling on their motion. Plaintiff cites *ARW Expl. Corp. v. Aguirre*, 45 F.3d 1455, 1460 (10th Cir. 1995), which states that the court must evaluate whether an individual is bound by a contractual duty to arbitrate before compelling arbitration. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *Id.*

*ARW Expl. Corp.* is distinguishable because there the shareholder did object to compulsory arbitration.   Here, St. John's Endowment does not object to arbitration. St. John's was a signatory of the arbitration agreement and St. John's is not resisting arbitration. Therefore, St. John's and St. John's Endowment will be treated equally at this time and referred to arbitration.

The parties do not argue that S.A. is not a signatory of the arbitration agreement or bound by its terms in any way. Plaintiff's claims against S.A. for battery and assault and negligent infliction of emotional distress will remain with the court.

V.      **Conclusion**

The court finds that plaintiff has failed to show that the arbitration agreement contained in the enrollment contract is unenforceable. Defendants have demonstrated that there is no genuine issue as to any material fact with respect to the arbitration agreement and the court finds that it is valid and enforceable as a matter of law. Plaintiff's claims against St. John's and St. John's Endowment are compelled to arbitration. However, plaintiff's claims against S.A. will remain under the court's jurisdiction.

**IT IS THEREFORE ORDERED** that defendants' Motion to Dismiss, or, in the Alternative, to Stay the Proceedings and Compel Arbitration (Doc. 5) is granted. Plaintiff's cause of action against defendants St. John's and St. John's Endowment is compelled to arbitration.

Dated this 21st day of December, 2016, at Kansas City, Kansas.

                                                                  s/ Carlos Murguia
                                                                  **CARLOS MURGUIA**
                                                                  **United States District Judge**